City of Philadelphia *v.* Joseph F. Kenny, Appellant.

City of Philadelphia *v.* Raymond F. Percival, Appellant.

City of Philadelphia *v.* E. A. Thomas, Appellant.

City of Philadelphia *v.* Guy W. Harvey, Jr., Appellant.

City of Philadelphia *v.* Abner B. Deckert, Appellant.

City of Philadelphia *v.* William H. Hazzard, Appellant.

City of Philadelphia *v.* James Sproles, Appellant.

City of Philadelphia *v.* Jerome L. Newman, c/o Defense Personnel Center, Jerome L. Newman, Appellant.

City of Philadelphia *v.* Frederic Jennings, Appellant.

City of Philadelphia *v.* Gloria T. Jones, c/o Defense Personnel Center, Gloria T. Jones, Appellant.

City of Philadelphia *v.* George V. Schock, c/o Defense Personnel Center, George V. Schock, Appellant.

City of Philadelphia *v.* George J. Cilona, Appellant.

City of Philadelphia *v.* Charles H. Cross, Appellant.

City of Philadelphia *v.* Arthur E. Cornell, Appellant.

City of Philadelphia *v.* Meyer Goldstein, Appellant.

532

Argued April 5, 1976, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

534

*Kenneth E. Aaron,* with him *Astor & Weiss,* for appellants.

*Stewart M. Weintraub,* Assistant City Solicitor, with him *Albert J. Persichetti,* Deputy City Solicitor, *Stephen Arinson,* Chief Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE KRAMER, February 8, 1977:

These cases involve appeals from the granting of summary judgments, or, as in several of the cases, judgments on the pleadings against the appellants. The appellants are residents of, or are domiciled in, the State of New Jersey, but are employed by the Federal Government at federal establishments inside the boundaries of the City of Philadelphia. These appeals are but the latest chapter in the history of litigation which has been unceasing since 1939, when the City first passed its Wage and Net Profits Tax Ordinance.[1]

---

[1] Philadelphia, Pa., Code §19-1500 et seq. (1973).

In each of these cases, the City filed a complaint in assumpsit in the Court of Common Pleas of Philadelphia County. The complaints are all similar. Each alleged that the named defendant had not paid the wage tax for the various years shown on the complaints. Each demanded payment of the delinquent taxes plus interest and penalties, pursuant to Section 19-508(1) of The Philadelphia Code, which provides in pertinent part:

(1) If any tax imposed under this Title is not paid when due, interest at the rate of $\frac{1}{2}\%$ of the amount of the unpaid tax and a penalty at the rate of 1% of the amount of the unpaid tax shall be added for each month or fraction thereof during which the tax shall remain unpaid and shall be collected, together with the amount of the tax.

Each defendant filed an answer in which he or she denied certain allegations of the complaint, and, as to the remaining allegations, asserted the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. Each answer also contained new matter which alleged that the action was barred by the statute of limitations and that the City's wage tax law was unconstitutional under the Pennsylvania and the United States Constitutions.

After all pleading procedures had closed, the City moved for judgment on the pleadings in its actions against Defendants Thomas, Percival, Kenny, Hazzard, Harvey, and Deckert. Judge PAUL A. DANDRIDGE entered orders granting the City's motion. In the actions against Defendants Sproles, Newman, Jennings, Jones, Schock, Goldstein, Cornell, Cilona, and Cross, the City submitted supporting affidavits and moved for summary judgment. The motions in these

cases were assigned to six separate judges, who heard and granted the motions. We will affirm the orders of the court below in all 15 of these appeals.

The primary issues raised by the appellants can be summarized as follows: (1) Do the appellants' assertions, in their answers, of the privilege against self-incrimination under the Fifth Amendment to the United States Constitution leave unresolved questions of fact which render judgment on the pleadings or summary judgment inappropriate? (2) Have the appellants adequately denied certain averments of fact in the City's complaint, so as to leave unresolved questions of fact which render judgment on the pleadings or summary judgment inappropriate? (3) Does the doctrine of estoppel for failure to exhaust administrative remedies preclude the appellants from raising, as new matter, the defenses of unconstitutionality of the wage tax ordinance and the running of the statute of limitations? and (4) If the appellants are not precluded from raising the aforementioned defenses, are there any unresolved questions of fact which must be answered before we may rule on the merits of these defenses?

As can be seen, the general thrust of these issues is a challenge to the appropriateness of judgments on the pleadings or summary judgments, as the case may be, for the disposition of these cases. As an appropriate starting point, we note our conclusion that each of the City's complaints contains adequate allegations to support a lawsuit in assumpsit, and, therefore, we are concerned with the legal sufficiency of the appellants' answers thereto. Since the pleadings in all of these cases are similar in all respects material to the application of the relevant legal principles, quoted portions of the pleadings will be drawn from the action against Guy W. Harvey for illustrative purposes.

I. Do the Appellants' Assertions of the Fifth Amendment Privilege Against Self-Incrimination Leave Unresolved Questions of Fact?

In paragraph 2 of each of the complaints, the City alleged the defendant's name, the name of his or her employer, his or her place of employment, and his or her social security number and account number with the Department of Collections. In paragraph 5 of each complaint, the City alleged the defendant's income for the years in question. Each appellant's answer responded to these averments by an assertion of the privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

It is indisputable that the Fifth Amendment privilege against self-incrimination is applicable to the States via the Fourteenth Amendment, and that it applies to protect an individual not only from being compelled to testify against himself in a criminal prosecution, but also privileges him not to answer official questions in any proceeding, criminal or civil, where the answer might incriminate him in future criminal proceedings. *Leftkowitz v. Turley,* 414 U.S. 70, 77 (1973).

In Pennsylvania, pleadings are conclusive in the actions in which they are filed. *Ham v. Gouge,* 214 Pa. Superior Ct. 423, 257 A.2d 650 (1969). Moreover, in the absence of statutory prohibitions, a party's *voluntary* testimony or statements made in pleadings or other papers filed in a judicial proceeding, may be used against him in a subsequent criminal prosecution. 1 Henry, Pennsylvania Evidence, §82 (4th ed. 1956); *see also Commonwealth v. Ensign,* 228 Pa. 400, 403-4, 77 A. 657, 658 (1910), *aff'd,* 227 U.S. 592 (1912); *Commonwealth v. Cavanaugh,* 159 Pa. Superior Ct. 113, 119, 46 A.2d 579, 582 (1946); *Charles v. Arrington,* 110 Pa. Superior Ct. 173, 177, 167 A. 428, 429

(1933). It follows that a defendant in a civil case must be entitled to assert the privilege in his pleadings, when allegations in the complaint call for answers which may tend to incriminate him. *See de Antonio v. Solomon,* 41 F.R.D. 447 (D.C. Mass. 1966); *Ensign, supra; Cavanaugh, supra.* It must be emphasized, however, that the interdiction of the privilege operates only in situations presenting the possibility of *criminal liability. Hale v. Henkle,* 201 U.S. 43, 67 (1906); *Riccobene Appeal,* 439 Pa. 404, 268 A.2d 104 (1970).

It is clearly the law of Pennsylvania that the prosecution for violation of a municipal ordinance is procedurally a civil case, *e.g., Waynesburg Borough v. van Scyoc,* 419 Pa. 104, 213 A.2d 216 (1965); *Commonwealth v. Ashenfelder,* 413 Pa. 517, 198 A.2d 514 (1964); *Philadelphia v. Home Agency, Inc.,* 4 Pa. Commonwealth Ct. 174, 285 A.2d 196 (1971). In *Philadelphia v. Konopacki,* 27 Pa. Commonwealth Ct. 391, 366 A.2d 608 (1976), this Court squarely held that an action for fines for violations of the wage tax provisions of the Philadelphia Code, §19-500 et seq. (1973), is a civil action. This is not dispositive, however, for each appellant has cited the case of *Philadelphia v. Cline,* 158 Pa. Superior Ct. 179, 44 A.2d 610 (1945), *cert. denied,* 328 U.S. 848 (1946), which held that the defendants in an action in assumpsit for *fines* for failure to file returns under the Philadelphia Wage Tax Ordinance could assert the privilege and refuse to testify, and that no comment could be made upon their silence, nor could any adverse inference be drawn from it. *Cline, supra,* at 184-86, 44 A.2d at 613. We are of the opinion that *Cline* was correctly decided, but we conclude that the judgments granted below in the present cases do not violate the holding in that case.

The holding in *Cline* rests upon the proposition that actions for penalties, even though prosecuted through modes of procedure applicable to the ordinary civil remedy, may be "criminal" in their nature for Fifth Amendment purposes, *e.g., United States v. United States Coin and Currency,* 410 U.S. 715 (1971); *Lees v. United States,* 150 U.S. 476 (1893); *Boyd v. United States,* 116 U.S. 616 (1886); *Osborne v. First Nat'l. Bank,* 154 Pa. 134, 26 A. 289 (1893); *Boyle v. Smithman,* 146 Pa. 255, 23 A. 397 (1892). As the cited cases point out, in such "quasi-criminal" cases, the Fifth Amendment privilege is fully applicable; the defendant may refuse to testify altogether and no adverse inference may be drawn from such refusal. We agree with the court in *Cline, supra,* that an action for *fines* and *imprisonment,* if said fine is not paid within ten days,[2] is such a "quasi-criminal" case.

However, not all penalties pursued by civil actions are "quasi-criminal." A penalty may be primarily remedial, as opposed to criminal, in character, and, if this is the case, such guarantees of the Fifth Amendment as the prohibition of double jeopardy and the privilege against self-incrimination do not apply. *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 237 (1972); *Rex Trailer Co. v. United States,* 350 U.S. 148, 152 (1956); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 548-52 (1943); *Helvering v. Mitchell,* 303 U.S. 391, 398-405, 404 n. 12 (1938). The penalty sought in the present cases under Section 19-508(1) is an addition to the appellants' taxes of one per centum per month for each month the tax remains unpaid. Such a sanction is primarily remedial in character. It is provided as a safeguard for the protection of the revenue and to reimburse

---

[2] Philadelphia, Pa., Code §19-508(3) (1973).

the City government for the heavy expense of investigations, litigation, and other measures designed to accomplish assessment and collection of taxes necessitated by the taxpayer's failure or refusal to pay that tax. *See Helvering v. Mitchell, supra* at 401. The penalty provided in Section 19-508(1) falls, in our opinion, entirely within the reasoning of the Court in *Mitchell.* It should be noted that the Court in that case, while in the process of concluding that a 50 percentum addition to taxes owed for fraudulent evasion was a purely civil sanction, noted that an addition to the tax of one percentum per month in the case of nonpayment was *obviously* intended by a Congress as a civil incident of the assessment and collection of the income tax. *Helvering v. Mitchell, supra,* at 405. We believe it likewise clear that the "penalty" in Section 19-508(1) of this Ordinance was intended by its promulgators as a civil incident of the assessment and collection of the wage tax, and we so hold.

Since we have held the present cases to be completely civil in nature, they *alone* provide no grounds to support the assertion of the privilege by the appellants. However, as pointed out in the briefs, the appellants may well be subjected to future proceedings by the City for fines and imprisonment in default of payment of said fines under Section 19-508(3) for failure to file returns covering the tax liability at issue here. Because of their reasonable apprehension of such "quasi-criminal" proceedings, the appellants were entitled to assert the privilege in these civil cases. *Leftkowitz v. Turley,* 414 U.S. 70, 77 (1973). This does *not* mean, however, that the effect of the privilege is the same as if it had been invoked in a criminal or quasi-criminal case. Although we have discovered no Pennsylvania cases so holding, there is much authority for the proposition that, while a de-

fendant in a civil case may invoke the privilege and it may not be used against him in any way in a *subsequent criminal prosecution,* the court in the *civil case* may draw any adverse inference which is reasonable from the assertion of the privilege. *Kent v. United States,* 157 F.2d 1 (5th Cir.) *cert. denied,* 329 U.S. 785 (1946); *Paynes v. Lee,* 362 F. Supp. 797 (M.D. La. 1973), *aff'd,* 487 F.2d 1307 (5th Cir. 1974); *Stillman Pond, Inc. v. Watson,* 115 Cal. App. 2d 440, 252 P.2d 717 (Ct. App. 1953); *Simpson v. Simpson,* 233 Ga. 17, 209 S.E. 2d 611 (1974); *Allen v. Lindeman,* 259 Iowa 1384, 148 N.W. 2d 610 (1967); *Ralph Hegman Co. v. Transamerica Insurance Co.,* 293 Minn. 323, 198 N.W. 2d 555 (1972); *Morgan v. U.S. Fidelity and Guaranty Co.,* 222 S.2d 820 (Miss.), *cert. denied,* 396 U.S. 842 (1969); *Harwell v. Harwell,* 355 S.W. 2d 137 (Mo. App. 1962); *Mahne v. Mahne,* 66 N.J. 53, 328 A.2d 225 (1974); *In Re Tesch,* 322 N.Y.S. 2d 538, 66 Misc. 2d 900 (1971); *Ikeda v. Curtis,* 43 Wash. 2d 449, 261 P.2d 684 (1953); *Molloy v. Molloy,* 46 Wisc. 2d 682, 176 N.W. 2d 292 (1970); 8 Wigmore, Evidence, §2272(1)(e) (McNaughton rev. 1961); 98 C.J.S. Witnesses ,§455. We conclude that the rule enunciated in the cited authorities is sound, and we adopt it. In the present cases, a reasonable inference to be drawn from the appellants' assertion of the privilege is that a truthful response to the relevant allegations of the City's complaint would fail to deny these allegations. *See, e.g., Simpson v. Simpson, supra,* at 21, 209 S.E. 2d at 614; *Molloy v. Molloy, supra,* at 687, 176 N.W. 2d at 296. Therefore, we may deem the allegations in paragraphs 2 and 5 of the complaint to be admitted by failure to deny specifically or by necessary implication,[3] and, therefore, the assertion of the privilege

---

[3] Pa. R.C.P. No. 1029(b), 42 Pa. C.S.A.

leaves *no* unresolved questions of fact which would render judgment on the pleadings or summary judgment inappropriate.

II. ARE THE APPELLANTS' DENIALS OF THE ALLEGATIONS IN PARAGRAPHS 4 AND 6 OF THE COMPLAINT SUFFICIENT TO LEAVE UNRESOLVED QUESTIONS OF FACT?

With the exception of the amount of taxes due, paragraph 4 in the City's complaint against each appellant was identical to that in the case of Guy W. Harvey:

(4) The defendant(s) has (have) failed to file tax returns and/or to pay to the Department of Collections, the taxes, or the balance of tax due under the aforesaid Ordinances, in the sum of $2,185.14, as more fully set forth in the statement hereto attached, marked Exhibit "A", and made a part hereof, together with interest and penalties as provided by Section 19-508(1) of the Philadelphia Code.

Each appellant responded as follows:

(4) It is denied that defendant owes the City any sum of money. On the contrary, it is averred that said claim is totally wrong.

In paragraph 6 of each complaint, with insignificant variations, in word order, it was alleged that:

(6) The City of Philadelphia made assessments from the earnings information supplied to the City of Philadelphia by the Federal Agency, and the defendant was notified of such assessments from which the defendant failed to file a petition for review with the Philadelphia Tax Review Board as permitted under Section 19-702 of the Philadelphia Code.

Each appellant, with one exception,[4] responded in identical fashion:

> (6) Denied. Defendant is without sufficient knowledge or information concerning how the City of Philadelphia made its assessments, although it is believed the City of Philadelphia has no valid basis for making any assessment whatsoever. Strict proof of this allegation is demanded at trial.

In their briefs, various of the appellants have argued that the court below erred in concluding that the appellant had admitted, by failing to properly deny under Pa. R.C.P. No. 1029, 42 Pa. C.S.A., the allegation that the named defendant had failed to file tax returns, had received notice of assessment, and had failed to appeal the assessment to the Tax Review Board. We cannot agree with appellants' contention.

In paragraph 4 of their answers, appellants did not specifically, or by necessary implication, deny the alleged failure to file tax returns. A blanket denial of any liability on the grounds that the City's claim is "totally wrong" cannot, by any stretch of the imagination, be said to necessarily imply a denial of the alleged failures to file returns or to pay the tax. In fact, the only reasonable conclusion we have perceived is that paragraph 4 implies an admission that the named appellant had not paid the tax alleged to be due, a fact expressly admitted in paragraph 7 of each of the answers. Paragraph 4 is, at best, a general denial of the allegation of failure to file tax returns. We agree with the court below that this allegation may be deemed admitted, and we so hold.

---

[4] Appellant Percival answered these allegations with an assertion of the Fifth Amendment privilege against self-incrimination. He is deemed to admit them, therefore, in accordance with part I of this Opinion.

The response in paragraph 6 of each of the answers fails to adequately deny the allegations that the named defendant was notified of the tax assessment and failed to seek review before the Tax Review Board. The response is inadequate for several reasons. First, it does not conform to the requirements of Pa. R.C.P. 1029(c) in that it fails to allege either that the named defendant's lack of knowledge and information existed "after reasonable investigation"[5] or that it was attributable to the means of proof being in "the exclusive control of an adverse party or a hostile person.'"[6] Second, *on its face,* the denial refers only to *how* the City made its assessments; to wit, that the assessments were made on the basis of information supplied by the Federal Agency (the employer). It does not specifically deny that the defendant received notice of an assessment or that he failed to appeal to the Tax Review Board. Third, a denial of the just mentioned allegation could not, in any event, be done by way of a demand for proof under Pa. R.C.P. No. 1029(c), because it is clear that, as to whether *he* received notice of the assessment, and whether *he* had appealed to the Tax Board, each defendant had sufficient knowledge on which to base an admission or specific denial. *Medusa Portland Cement Co. v. Marion Coal & Supply Co.,* 204 Pa. Superior Ct. 5, 8, 201 A.2d 285, 286 (1964). We agree with the court below that the appellants are to be deemed to have admitted to receipt of notice of assessment and failure to appeal to the Tax Review Board, and we so hold.

We pause to note at this point that all of the City's allegations in its complaint have been admitted in one way or another in each answer. Those in paragraphs 1, 3 and 7 are expressly admitted. Those in para-

---

[5] Pa. R.C.P. No. 1029(c)(1).

[6] Pa. R.C.P. No. 1029(c)(2).

graphs 2 and 5 are deemed admitted as a consequence of the assertion of the Fifth Amendment privilege against self-incrimination (Part I of this Opinion). Finally, those in paragraphs 4 and 6 are deemed admitted for failure to deny in accordance with Pa. R.C.P. No. 1029 (Part II of this Opinion). It remains to be considered whether the allegations under the heading of "new matter" in the appellants' answers raise questions of fact which stand as a bar to judgment on the pleadings or summary judgment.

III. Do THE ALLEGATIONS IN THE APPELLANTS' NEW MATTER RAISE UNRESOLVED QUESTIONS OF FACT?

Under "new matter," each appellant asserted as defenses (1) the unconstitutionality of the Tax Ordinance *as applied* to the defendant, and (2) the bar of the statute of limitations. The lower court rejected these on two grounds. First, the appellants were held to be precluded from raising these issues for failure to exhaust the administrative remedy provided in the Ordinance. Second, and in the alternative, based on the facts as found in the pleadings and the applicable principles of law, each defense was held to be without merit. We agree with the lower court on both grounds.

The City of Philadelphia Tax Review Board is an administrative agency created by Sections 3-100(f) and 6-207 of The Philadelphia Home Rule Charter. Pursuant to the authority granted by Section 6-207, the City Council enacted the Tax Review Board Ordinance, as codified in the Philadelphia Code, §19-1700 et seq. Under Section 19-1702(1) of the Code, the Tax Review Board is empowered to hear "[e]very petition for review of any decision or determination relating to the liability of any person for any unpaid money or claim collectible by the Department of Collections including . . . any tax and interest and pen-

alties thereon. . . ." A right of appeal to any court of competent jurisdiction from an adverse decision of the Board is provided for by Section 19-706(2) of the Code.

The Statutory Construction Act of 1972, 1 Pa.C.S. §1504, provides:

> In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, *the directions of the statute shall be strictly pursued,* and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect. (Emphasis added.)

The Philadelphia Home Rule Charter has the status of an act of the General Assembly. *Addison Case,* 385 Pa. 48, 57, 122 A.2d 272, 276 (1956). As such, the procedure established by the Charter and the Ordinance passed to supplement and carry out its provision is a "remedy" subject to the rule of exhaustion prescribed in the Statutory Construction Act. *Philadelphia v. Sam Bobman Department Store Co.,* 189 Pa. Superior Ct. 72, 81-82, 149 A.2d 518, 523 (1959) (considering the applicability to the ordinance in question of the predecessor act to §1504 of the Statutory Construction Act). The rule applies to defenses as well as to affirmative actions. *Philadelphia v. Kolb,* 288 Pa. 359, 136 A. 239 (1927); *Philadelphia v. Sam Bobman Department Store Co., supra; Philadelphia v. Dougherty,* 153 Pa. Superior Ct. 554, 34 A.2d 918 (1943).

The appellants recognize the general rule requiring exhaustion of administrative remedies, but assert that the present cases fall within the exception to the rule which finds its most recent definitive statement in *Borough of Greentree v. Board of Property As-*

*sessments,* 459 Pa. 268, 328 A.2d 819 (1974). We cannot agree.

In *Greentree,* our Supreme Court was presented with a case where three municipalities and numerous individual taxpayers had bypassed the remedy of administrative review provided by statute and brought, in equity, a constitutional challenge going directly to the validity of the statutory assessment scheme applicable to Allegheny County. The Court held that where there is a *substantial constitutional question going directly to the validity* of a statute *and* the statutory remedy is inadequate, a court of *equity* has jurisdiction regardless of the failure to pursue the administrative remedy. *Id.* at 281-82, 328 A.2d at 825.

For several reasons, the present cases do not fall within the decision in *Greentree.* First, the appellants have attempted to raise the issue of the constitutionality of the wage tax as a defense to an action on the *law side* of the Common Pleas Court. The Tax Review Board Ordinance, §19-1700 et seq. of the Philadelphia Code, provides the remedy at law. If it is inadequate and the requisite constitutional issues exist, *Greentree* provides a remedy in equity. Yet appellants are not satisfied. They want a third alternative. They desire to sit back and wait until the City seeks an action in assumpsit for the taxes due, and then be permitted to press the constitutional questions as a defense to the action. This Court will not countenance such a significant erosion of the rule requiring exhaustion of remedies, at least where the case is civil in nature.[7]

---

[7] We agree with the Court in *McKart v. United States,* 395 U.S. 185 (1969) that, under particular circumstances, application of the exhaustion rule to bar a defense in a criminal prosecution may not be proper.

Second, in the present cases the appellants have asserted in their pleadings that the Tax Ordinance is unconstitutional *as applied* to the appellants. Thus, we do not have a challenge "going directly to the validity" of the underlying ordinance. Moreover, as we shall demonstrate shortly, most, if not all, of the "grave constitutional questions" arising from the Philadelphia Wage Tax Ordinance have already been decided. *See Rochester & Pittsburgh Coal Company v. Indiana County Board of Assessment and Revision of Taxes,* 438 Pa. 506, 509, 266 A.2d 78, 79 (1970). Thus, we are of the opinion that even if these were equity actions brought by appellants, the constitutional issues which they seek to raise would be barred by appellants' failure to exhaust their administrative remedies. *Rochester, supra.*

Third, unlike the very specific allegations of unconstitutionality made in the pleadings in *Greentree*[8], the appellants have merely averred that "The Tax Ordinance as applied to the Defendants is unconstitutional and in violation of both the State and Federal Constitutions." The Pennsylvania Supreme Court, in *Rochester* at 506, 266 A.2d at 79, made it clear that, to confer jurisdiction on an equity court, there must be the absence of an adequate statutory remedy and the existence of a clear and obviously substantial question of constitutionality. A "mere allegation" of unconstitutionality is not sufficient. Even if the *Greentree* exception to the exhaustion rule could be applied to defenses in actions on the law side, we conclude that the threshold requirements would be no less and that the bare allegation of unconstitutionality by appellants is not sufficient to set forth a "substantial question of constitutionality."

---

[8] 459 Pa. at 272, 328 A.2d at 821.

Finally, the court in *Greentree* justified the exercise of equitable jurisdiction on the grounds that "the more direct the attack on the statute, the more likely it is that exercise of equitable jurisdiction will not damage the role of the administrative agency charged with enforcement of the act, nor require, for informed adjudication, the factual fabric which might develop at the agency level." 459 Pa. at 281, 328 A.2d at 825. Under the facts and procedure presented to us in these cases, we hold that an informed adjudication of appellants' nebulous assertion of unconstitutionality of the tax as applied and their raising of the bar of the statute of limitations would best be arrived at by the development of a factual record at the agency level. The Tax Board itself could have then applied those facts to the period of limitations in the Ordinance and, subject to judicial review of the legal issue, determined whether the claims were barred. While the Tax Board may be without power to determine the constitutional questions,[9] the court called upon to make such determinations is relieved of the burden of building the factual record itself.

We hold that the appellants' failure to exhaust the administrative remedy of review by the Tax Board (a fact held previously to be admitted in the pleadings) precludes the raising of the defenses of unconstitutionality of the tax as applied and the bar of the statute of limitations.

Assuming in the alternative, as did the court below, that the appellants' defenses are not precluded by the

---

[9] It is clear that an agency is without power to determine the constitutionality of its enabling legislation. *Greentree* at 281, 328 A.2d at 825; *Philadelphia Life Insurance Co. v. Commonwealth*, 410 Pa. 571, 580, 190 A.2d 111 (1963). It is not clear whether an agency is without power to rule on any constitutional question. We need not decide that question here, and we leave it for resolution when we are squarely faced by it.

exhaustion rule, we are of the opinion that they are without merit. The constitutionality of the Philadelphia Wage Tax has been subject to continuing challenge over its nearly 37-year history under both the Pennsylvania and the United States Constitutions. Most of these challenges have been by New Jersey residents working in federal establishments in Philadelphia. They have been brought in both state and federal courts. The tax has been attacked from almost every conceivable angle: as violating due process, equal protection, uniformity, and federal immunity; as infringing upon the privilege against self-incrimination; as unreasonably burdening interstate commerce; as impairing the obligation of contract; and as offending the privileges and immunities clause. Yet in each instance the tax has passed constitutional muster. *Non-Resident Taxpayers Ass'n. v. Murray,* 347 F. Supp. 399 (E.D. Pa.), *aff'd,* 410 U.S. 919 (1972); *Non-Resident Taxpayers Ass'n. v. Philadelphia,* 341 F. Supp. 1139 (E.D. Pa. 1971), *aff'd,* 478 F.2d 456 (3d Cir. 1973); *In Re Thompson,* 157 F. Supp. 93 (E.D. Pa. 1957), *aff'd* sub nom. *United States ex rel. Thompson v. Lennox,* 258 F.2d 320 (3d Cir. 1958), *cert. denied,* 358 U.S. 931 (1959); *Kiker v. Philadelphia,* 346 Pa. 624, 31 A.2d 289, *cert. denied,* 320 U.S. 741 (1943); *Dole v. Philadelphia,* 337 Pa. 375, 11 A.2d 163 (1940); *Philadelphia v. Cline,* 158 Pa. Superior Ct. 179, 44 A.2d 610 (1945), *cert. denied,* 328 U.S. 848 (1946); *Philadelphia v. Schaller,* 148 Pa. Superior Ct. 276, 25 A.2d 406, *cert. denied,* 317 U.S. 649 (1942).

For many years New Jersey residents who are federal employees within the boundaries of Philadelphia have been fighting to evade, or avoid, or find sanctuary from their responsibility as users of the services provided by the City of Philadelphia by fighting and

not paying a wage tax which was first applied to this nonresident class in 1942.[10] It took Acts of Congress and opinions of the Supreme Courts of both the federal and the state judiciary to resolve the issue of the authority of Philadelphia to tax wages earned inside its city limits. All of that is behind us now. Yet these same constitutional questions are still mentioned in the briefs in the appeals currently before us, apparently in the hope that some appellate court somewhere will change the law. That is not likely to happen, and it will not happen in this case. Suffice it to say that questions of the constitutionality of the Phil-

---

[10] Having just witnessed the Bicentennial year, when the people of New Jersey and Pennsylvania as well as the people of their sister states have so genuinely shown concern for one another, it is ironic that these cases continue on in what this writer believes to be a frivolous and vexatious manner. There is no question that there have been serious constitutional questions, but they have been resolved many years ago, and yet, many New Jersey residents who desire, understandably, to avoid any more taxation are still attempting to take all the benefits they can wring out of the City of Philadelphia without paying for same. This writer need not go into litany of beneficial services provided by the City. It is sufficient to point to the provision of health care, fire and police protection, to the use of the streets, sewers, water, and other utilities; to the use of Philadelphia's hospitals, universities, colleges, museums, aviaries, libraries, zoo, and conservatory, none of which facilities pay taxes. Enough is said concerning the benefits that the New Jersey residents are unfairly reaping at the expense of the Philadelphia taxpayers. In 1977 most reasoning adults who have any familiarity with the front pages of their respective newspapers know that large metropolitan areas, especially cities like Philadelphia and New York, are close to bankruptcy because of the high cost of everything. Inflation hits government as well as it hits the private citizen. The people of this country must come to realize that in order to save the cities, which perform functions which make this country work, the cities cannot continue to provide services to nonresidents without some kind of compensation. To hold otherwise would be to fail to realize that municipal over-burden is one of the most important defects in the operation of local governments in this country.

adelphia Wage Tax Ordinance and its application to nonresidents of the City working within Philadelphia have long since been put to rest, and we will not exhume those issues merely to verify that they are dead.

The attempt by the appellants to raise the bar of the statute of limitations provides several more instances of frivolous argument.

Section 19-509 of the Philadelphia Code, in pertinent part, provides:

Any suit to recover any tax imposed by this Title, other than real estate and personal property taxes, shall be begun within 6 years after such tax is due or within 6 years after the return or report has been filed, whichever date is later; but this limitation shall not apply in the following cases;

(a) Where the taxpayers failed to file the return or report required under the provisions of this Title;

All of the appellants raise the bar of the six-year limitations period in their pleadings, and all except Percival raise the issue on appeal. Yet of the 15 actions before us, 10 are not even arguably barred by the limitations period. Actions against Hazzard and Percival were commenced on January 4, 1973 for the tax years 1968 to 1971. Actions were commenced on November 15, 1973 against Jones and Cross for tax years 1968 to 1972; against Schock, Cornell and Cilona for tax years 1970 to 1972; and against Newman, Jennings, and Goldstein for tax years 1971 and 1972. As to the above appellants, the claim of the bar of the statute of limitations is a flagrantly unfounded defense.

With regard to remaining appellants, we reject the argument that the receipt by the City of earnings in-

formation covering appellants from their federal employers caused the six-year statute to begin running. Section 19-509 imposes the duty to file a return or report upon the *taxpayer*. None of the appellants have done so. Taxation throughout the United States relies heavily on the assumption that each taxpayer will voluntarily and honestly file the relevant reports and pay the amount of tax legally due. To accept the appellants' argument would be to effectively impose upon the Philadelphia taxing authorities the tremendous burden of collating information received from employers to derive the total taxable earnings from all sources for persons subject to the local wage tax who refuse or fail to file returns. This we will not do. The case of *Philadelphia v. Litvin*, 211 Pa. Superior Ct. 204, 235 A.2d 157 (1967), cited by appellants, is not apposite. In *Litvin*, the taxing authorities had *fully audited* the taxpayers' records. We agree that a full audit by the taxing authorities fully serves the purposes behind requiring the filing of a tax return and that the statute of limitations runs from the date of the audit. However, an earnings report elicited from an employer is not the equivalent of a full audit of the taxpayer's records, and we conclude it is not sufficient to start the running of the statute.

IV. DID DENIAL OF ORAL ARGUMENT ON THE MOTION FOR JUDGMENT ON THE PLEADINGS VIOLATE RULE 211 OF THE PENNSYLVANIA RULES OF CIVIL PROCEDURE?

There remains for resolution one issue raised *solely* by Appellant Percival: Whether the lower court violated Rule 211 of the Pennsylvania Rules of Civil Procedure by granting a motion for judgment on the pleadings without allowing oral argument as requested by both parties?

In pertinent part, Pa. R.C.P. No. 211, 42 Pa.C.S.A. provides:

*Oral Argument.*

Any party or his attorney shall have the right to argue any motion and the court shall have the right to require oral argument. With the approval of the court oral argument may be dispensed with by agreement of the attorneys and the matter submitted to the court either on papers filed of record, or such briefs as may be filed by the parties. . . .

On July 31, 1963, the Pennsylvania Supreme Court adopted rules governing "The Business of the Courts in the First Judicial District." Rule IV provides, *inter alia*:

IV.—In exercising the administrative supervision prescribed under III over civil, equity, and criminal practice and procedure, the Administrative Judge shall have the following general powers for facilitating the speedy and proper administration of justice in those courts.

. . . .

D. To provide for, establish and maintain a consolidated motion list . . . and in addition to provide and establish procedures necessary and proper to implement these practices.

. . . .

H. To make rules and regulations and do any and all things necessary and proper to carry out the purposes and intent of the general powers granted to the Administrative Judge herein.

Pursuant to this grant of powers, the President Judge of the Common Pleas Court of Philadelphia County promulgated general court regulation No. 71-12, effective August 23, 1971. Among its other provisions, regulation no. 72-12 granted to Motion Judges

the discretion to grant or deny requests for oral argument.

There are no court decisions on the issue of whether 211 is a qualified or unqualified right to oral argument. However, in his discussion of Rule 211, Anderson states:

> Rule 211 gives every party or his attorney a *qualified* right to make an oral argument on any motion. The court by local rule may regulate the length of time of such arguments. *In a given case the local court may also dispense with oral argument if it so desires and dispose of the case on the record or upon briefs.* The parties may also waive oral argument unless it is required by the court. 1 A. Anderson, Pennsylvania Civil Practice §211.1 (third edition 1975). (Emphasis added.)

We are of the opinion that Rule 211 was not intended to compel a Motion Judge to allow pointless oral argument. We think the grant of discretion in general court regulation 21-72, which allows a Motion Judge to deny oral argument when it would serve no useful purpose, is valid. We also note at this point that the appellant did not, until this appeal, object to the grant of discretion in Regulation 21-72. In any event, exercise of that discretion is subject to appellate review.

Appellant Percival insists that his case is sufficiently different from the other appeals before us so that judgment on the pleadings would not have been granted if he had been given the opportunity for oral argument. The only difference which we can discover lies in the fact that Percival answered the City's allegations regarding the making of an assessment, the receipt of notice of same by appellant, and his failure to appeal to the Tax Review Board, by an assertion of

the privilege against self-incrimination instead of by a demand for proof. In view of parts I and II of this Opinion, this difference is not material; either form of answer is deemed an admission. We find no abuse of discretion in the denial of oral argument.

### Conclusion

Based upon the reasoning and conclusions in Parts I, II and III of this Opinion, it is the conclusion of this Court that the pleadings in these 15 cases leave no questions of unknown or unresolved material fact and that trial on the merits would be a fruitless exercise. The granting of motions for judgment on the pleadings, in those cases where such motions were made, was proper. As for those cases involving the granting of summary judgment, we find nothing in the City's affidavits which would detract from or conflict with the pleadings in those cases. Therefore, we hold the granting of summary judgment in those cases to be likewise proper. We affirm the judgments of the court below.

### Order

And Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 428, dated March 13, 1975, granting judgment on the pleadings against Joseph F. Kenny is hereby affirmed.

And Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 425, dated March 13, 1975, granting judgment on the pleadings against Raymond F. Percival is hereby affirmed.

And Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 424, dated March 13, 1975, granting judgment on the pleadings against E. A. Thomas is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 430, dated March 13, 1975, granting judgment on the pleadings against Guy W. Harvey, Jr. is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 433, dated March 13, 1975, granting judgment on the pleadings against Abner B. Deckert is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 429, dated March 13, 1975, granting judgment on the pleadings against William H. Hazzard is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2245, dated April 7, 1975, granting summary judgment against James Sproles is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2040, dated May 1, 1975, granting summary judgment against Jerome L. Newman is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2054, dated April 21, 1975, granting summary judgment against Frederic Jennings is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2042, dated April 21, 1975, granting summary judgment against Gloria T. Jones is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of

Philadelphia No. 2045, dated May 1, 1975, granting summary judgment against George V. Schock is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2146, dated June 4, 1975, granting summary judgment against George J. Cilona is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2062, dated June 4, 1975, granting summary judgment against Charles H. Cross is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2087, dated July 30, 1975, granting summary judgment against Arthur E. Cornell is hereby affirmed.

AND Now, this 8th day of February, 1977, the Order of the Court of Common Pleas of the County of Philadelphia No. 2127, dated July 30, 1975, granting summary judgment against Meyer Goldstein is hereby affirmed.